**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                Case No. 2:19-cr-20143-MSN-1

JERROD WILLIAMS,

    Defendant.

_____

**ORDER ADOPTING REPORT AND RECOMMENDATION AND ORDER DENYING
MOTION TO SUPPRESS**

_____

        This matter comes before the Court on Defendant Jerrod Williams' Motion to Suppress. (ECF No. 23.) The matter was referred to Magistrate Judge Charmaine G. Claxton for Report and Recommendation. (ECF No. 24.) Magistrate Judge Claxton issued her Report and Recommendation, incorporating by reference her oral ruling on the matter, on October 1, 2020. (ECF Nos. 30, 33.) The Report recommended that Defendant's Motion be denied. (ECF No. 33 at PageID 59.) Defendant timely filed his objections to the Report. (ECF No. 37.) The United States submitted a response to those objections. (ECF No. 44.) For the reasons below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation in its entirety and **OVERRULES** Defendant's objections. Accordingly, Defendant's Motion to Suppress, (ECF No. 23), is **DENIED**.

<u>**Background**</u>

        This case concerns the discovery of a firearm and a *Terry* stop. Back in June 2018, Memphis Police Officer Christopher Street ("Officer Street") was assisting a fellow officer with a

traffic stop. (ECF No. 34 at PageID 117.) During the stop, a passerby informed the officers that a Black male with dreadlocks was waiving a gun around at a nearby liquor store and that he appeared angry. (*Id.* at PageID 67, 118.) The passerby pointed Officer Street in the direction of T.J.'s Liquor, which is located on Summer Avenue. (*Id.* at PageID 86; *see also* Exhibit 2 at 22:33:59.)[1]

Officer Street arrived at T.J.'s Liquor in less than two minutes after receiving the information from the passerby. (ECF No. 34 at PageID 118; *see also* Exhibit 2 at 22:34:30–22:35:05.) He observed a group of people in the parking lot, and among that group was an individual who matched the description he had just received from the passerby; that man happened to be Defendant. (ECF No. 34 at PageID 118.)

In the back of the parking lot sat a semi-trailer. (*Id.* at PageID 69–70.) Officer Street saw Defendant walk towards the back of the semi-trailer and discard a firearm.[2] (*Id.* at PageID 118.) After seeing that, Officer Street then approached Defendant. (*Id.*) In response to Officer Street asking if he had anything on him, Defendant offered to let Officer Street search his person. (*Id.* at PageID 119; *see also* Exhibit 2 at 22:35:53.) The subsequent pat down turned up Defendant's cellphone. (ECF No. 34 at PageID 118.) Defendant was then placed in the back of Officer Street's patrol car. (*Id.*)

---

1. Both the United States and Defendant introduced into evidence footage from Officer Street's bodycam on the day in question. At times, the Court will refer to Exhibit 2, the uncut version, and provide the timestamp located at the top right corner, *e.g.* Exhibit 2 at XX:XX:XX.

2. Defendant contests whether Officer Street observed Defendant discard a firearm. (ECF No. 37 at PageID 133.) Defendant challenges the veracity of Officer Street's statement on the ground that his bodycam, which was centered on his chest, did not record Defendant discarding a firearm. (*Id.*)

With Defendant secured, Officer Street walked behind the semi-trailer to the area where he saw Defendant earlier. (*Id.* at PageID 119.) There, he found a firearm. (*Id.*) He then returned to his patrol car and spoke with Defendant. (*Id.*) Defendant informed Officer Street that he had a felony conviction. (*Id.*; *see also* Exhibit 2 at 22:38:42.) As a result, Officer Street then placed Defendant under arrest. (ECF No. 34 at PageID 119; *see also* Exhibit 2 at 22:38:42.) Defendant was later indicted on one count of violating 18 U.S.C. § 922(g). (ECF No. 2.)

Defendant moved to suppress the discovery of the firearm primarily on the grounds that he was unlawfully seized by Officer Street. (ECF No. 23.) The Magistrate Judge issued her Report recommending that Defendant's motion should be denied. (ECF No. 33.) Defendant timely filed his objections, and the United States has responded to those objections. (ECF Nos. 37, 44.)

**Standard of Review**

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. *See United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001) (citing *Gomez v. United States*, 490 U.S. 858, 869–70 (1989)); *see also Baker v. Peterson*, 67 Fed. Appx. 308, 310 (6th Cir. 2003). For dispositive matters, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. §636(b)(1). After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1). The district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *See id.* at 151.

Objections to any part of a Magistrate Judge's disposition "must be clear enough to enable

3

the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Arn*, 474 U.S. at 147 (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute."). Each objection to the Magistrate Judge's recommendation should include how the analysis is wrong, why it was wrong and how *de novo* review will obtain a different result on that particular issue. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

A general objection, or one that merely restates the arguments previously presented and addressed by the magistrate judge, does not sufficiently identify alleged errors in the report and recommendation. *Id.* When an objection reiterates the arguments presented to the magistrate judge, the report and recommendation should be reviewed for clear error. *Verdone v. Comm'r of Soc. Sec.*, No. 16-CV-14178, 2018 WL 1516918, at *2 (E.D. Mich. Mar. 28, 2018) (citing *Ramirez v. United States*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012)); *Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 965 (E.D. Tenn. 2017).

## Analysis

The Magistrate Judge's Report recommended that Defendant's Motion be denied. (ECF No. 30 at PageID 55; ECF No. 33 at PageID 59.) The Report first reasoned that Officer Street lawfully seized Defendant as part of a *Terry* stop while he quickly searched for the firearm. (ECF No. 30 at PageID 51–52.) Alternatively, assuming *arguendo* that Defendant was unlawfully seized, the Report concluded that the unlawful seizure had no connection to the discovery of the firearm. (*Id.* at PageID 53–54.) In other words, the unlawful seizure of Defendant did not taint the discovery of the firearm. (*Id.* at PageID 54.) Defendant objects to both of the Report's findings.

### A. **Defendant was lawfully detained as part of a *Terry* stop**

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV; *see also Elkins v. United States*, 364 U.S. 206, 222 (1960) ("[W]hat the Constitution forbids is not all searches and seizures, but **unreasonable** searches and seizures.") (emphasis added).

This case hinges on the encounter between Officer Street and Defendant. There are three types of "permissible" encounters between law enforcement and every-day citizens. *See United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004); *United States v. Waldon*, 206 F.3d 597, 602 (6th Cir. 2000). The first involves a consensual encounter between law enforcement and an individual and requires no suspicion of criminal activity. *Alston*, 375 F.3d at 411. The second envisions what has been commonly termed a *Terry* stop or a brief investigative detention, which usually must be supported by reasonable suspicion. *Id.* The last involves an arrest based on probable cause. *Id.*

This case implicates all three. (ECF No. 30 at PageID 49.) First, the consensual encounter. After arriving on the scene, Officer Street approached Defendant and asked him if he had anything on him. (ECF No. 30 at PageID 48; *see also* Exhibit 2 at 22:35:50.) Defendant responded that he did not and offered to let Officer Street search him. (ECF No. 30 at PageID 48; *see also* Exhibit 2 at 22:35:51.) From there, the encounter evolved into phase two—the investigative detention or *Terry* stop— when Officer Street placed Defendant in the back of his squad car while he searched for the firearm. (ECF No. 30 at PageID 50–51; *see also* Exhibit 2 at 22:36:05–22:37:18.) Finally, after locating the gun and confirming that Defendant had a felony conviction, Officer Street placed Defendant under arrest. (ECF No. 30 at PageID 53; *see also* Exhibit 2 at 22:38:45.) In sum, what started as a consensual encounter, led to an investigative stop, which in turn, resulted in

Defendant's arrest.  Defendant's objections argue that Officer Street lacked reasonable suspicion to detain Defendant.

To avoid running afoul of the Fourth Amendment, Officer Street needed some constitutional basis to seize Defendant.  The Magistrate Judge's Report concluded that Officer Street lawfully seized Defendant as part of a constitutional *Terry* stop.  (ECF No. 30 at PageID 55.)  In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that officers may briefly detain an individual based on an officer's reasonable suspicion.  *See* 392 U.S. at 27; *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989) (stating that, under *Terry v. Ohio,* an officer can "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause"); *United States v. Patterson*, 340 F.3d 368, 370 (6th Cir. 2003) ("In *Terry v. Ohio*…, the Supreme Court held that officers have the authority under the Fourth Amendment to stop and temporarily detain citizens with only reasonable suspicion to justify the stop.").

The Court undergoes a two-step analysis in determining the constitutionality of a *Terry* stop.  *See United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005).  First, the Court asks "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion."  *Id.* (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)).  To answer this question, the Court looks at the totality of the circumstances.  *See United States v. Arvizu*, 534 U.S. 266, 273 (2002).  If reasonable suspicion exists, the Court next turns to "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances."  *Davis*, 430 F.3d at 354 (quoting *Garza*, 10 F.3d at 1245).

### I. Reasonable suspicion existed here.

The Court looks to the totality of the circumstances to determine whether Officer Street had reasonable suspicion to conduct an investigative stop. *See Arvizu*, 534 U.S. at 273. In deciding to briefly detain Defendant, Officer Street relied in part on his own observation of seeing Defendant discard a firearm and on the tip received from the passerby. (ECF No. 30 at PageID 52.) The Report concluded that this sufficed to establish reasonable suspicion. (*Id.* at PageID 52, 55.)

Defendant raises pointed objections on this issue. First, Defendant attacks the tip Officer Street received from the passerby. (ECF No. 37 at PageID 134.) Defendant next seeks to undermine Officer Street's testimony that he observed Defendant discard the firearm by raising the issue that his bodycam failed to capture the same. (*Id.*) Finally, Defendant relies on the Sixth Circuit's opinion in *United States v. Patterson*, 340 F.3d 368 (6th Cir. 2003) to argue that reasonable suspicion did not exist here. (*Id.* at PageID 135.) The Court is unpersuaded.

At first blush, Defendant's complaint about the passerby's tip may appear to have some merit. Officer Street neither confirmed the tipster's identity nor probed for any additional information that would indicate the tip's reliability; instead, Officer Street simply took the passerby at his word. (ECF No. 34 at PageID 83–85.) Thus, it appears that this tip resembles the kind of anonymous tip the Supreme Court cautioned against in *Florida v. J.L.* 529 U.S. 266 (2000). The tip here, like the one in *J.L.*, lacks the requisite "indicia of reliability" that, taken alone, could give rise to reasonable suspicion. *Id.* at 271. This line of attack, however, ignores the fact that Officer Street did not just solely rely on tip. Rather, he testified that he personally observed Defendant discard the firearm. *See J.L.*, 529 U.S. at 270 ("In the instant case, the officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely

7

from a call made from an unknown location by an unknown caller."). The question is not whether the tip justified the stop but whether the tip in conjunction with Officer Street's observation amounts to reasonable suspicion.

Notably, the reasonable suspicion standard does not present the most demanding hurdle to overcome. *See Kansas v. Glover*, 140 S.Ct. 1183, 1188 (2020) ("The reasonable suspicion inquiry falls considerably short of 51% accuracy, for, as we have explained, [t]o be reasonable is not to be perfect[.]") (internal citations and quotations omitted). Indeed, the showing for reasonable suspicion is lower than what is required for probable cause. *See United States v. Herndon*, 501 F.3d 683, 691 (6th Cir. 2007) (stating that reasonable suspicion "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard" (quoting *Arvizu*, 534 U.S. at 274)); *United States v. Lindsey*, 114 F. App'x 718, 722 (6th Cir. 2004) ("Reasonable suspicion is a lower standard than probable cause[.]"). An officer's "hunch" alone does not suffice to create reasonable suspicion. *Arvizu*, 534 U.S. at 274. Instead, an officer must rely on "specific and articulable facts" to support a finding of reasonable suspicion. *Davis*, 430 F.3d at 354 (quoting *Garza*, 10 F.3d at 1245).

Here, the tip working in tandem with Officer Street's observation easily clears this threshold. While the tip alone cannot serve as a basis for reasonable suspicion, that does not mean the Court must ignore it altogether. *See United States v. Caruthers*, 458 F.3d 459, 465 (6th Cir. 2006) (stating that the Court cannot "simply dismiss the anonymous call altogether where, as here, other suspicious circumstances also existed") *partially abrogated on other grounds by Mathis v. United States*, 136 S.Ct. 2243 (2016). The Court must analyze the totality of the circumstances. Officer Street testified that Defendant matched the description provided by the tipster. Further, and most important, Officer Street testified that he observed Defendant discard the firearm.

The bodycam footage introduced at the suppression hearing supports his testimony. Officer Street's bodycam footage shows Defendant appearing from the back of the semi-trailer. (Exhibit 2 at 22:35:40.) Immediately after placing Defendant in the back of the patrol car, Officer Street informs another officer that Defendant discarded a firearm behind the semi-trailer. (*Id.* at 22:36:48.) Officer Street then immediately proceeds to the area where he testified to seeing Defendant discard the gun and retrieved the gun there. (*Id.* at 22:36:56–22:37:13.) This personal observation working in conjunction with the earlier tip provides sufficient grounds for a reasonable suspicion that criminal activity "may be afoot." *Sokolow*, 490 U.S. at 7.

The Court now turns to what appears to be the gravamen of Defendant's objections: whether Officer Street observed Defendant discard the firearm. Defendant contends that Officer Street could not see Defendant discard the firearm because his bodycam did not capture it. (ECF No. 37 at PageID 134); in other words, Defendant argues that the bodycam captured the totality of what Officer Street could observe. (*Id.*) Defendant is correct that the bodycam footage did not clearly capture Defendant discard the gun. (ECF No. 34 at PageID 90.) This argument, however, both overestimates the ability of bodycams and underestimates human observation.

As the Report explained, a bodycam is just another tool in an officer's arsenal. (ECF No. 30 at PageID 52.) It does not supplant the officer's skills and observations made out in the field. (*Id.*) Notably, the semi-trailer in the parking lot sat several feet above of the ground, allowing Officer Street a line of sight through this opening. (ECF No. 34 at PageID 91; *see* Exhibit 2 at 22:35:30.) The bodycam footage, however, cuts off this portion of the semi-trailer from its view at times. Critically, there was no evidence that Officer Street could not take advantage of this line of sight even though his bodycam could not.

Further, the logic of this line of attack quickly unravels by use of a simple example. Take

9

for instance Officer Street's bodycam, which was facing forward and centered on his chest. (ECF No. 34 at PageID 89.) If Officer Street turned his head to the side to observe a commotion, the bodycam would not capture it. (*See* ECF No. 30 at PageID 52.)  In light of that, one could not truthfully say that what the officer observed did not happen simply because the bodycam did not capture it.  A bodycam, like any other kind of camera, only captures what it is in front of it.

All this to say, the bodycam footage does not definitively refute Officer Street's testimony that he observed Defendant discard a firearm.  In the absence of dispositive footage, the Court is left with the age-old problem of having to sift through testimony to ascertain what occurred.  Here, Officer Street testified that he observed Defendant discard a firearm, and the Report found that testimony credible. (*Id.*)  The Court sees no reason to disturb that conclusion.

As his last objection, Defendant relies on the case of *United States v. Patterson*, 304 F.3d 368 (6th Cir. 2003), to argue by analogy that reasonable suspicion did not exist here. (ECF No. 37 at PageID 135.)  This argument is misplaced for *Patterson* differs from the case at the bar in key respects.  True, both this case and *Patterson* involve an anonymous tip that lacked sufficient indicia of reliability.  304 F.3d at 371. Thus, the tip alone could not give rise to reasonable suspicion.  *Id.*  However, unlike in *Patterson*, Officer Street observed Defendant engaging in suspicious behavior before stopping him.  *Id.* ("Without the anonymous tip, the officers merely observed a group of individuals walking away from the area, in isolation an innocuous behavior unless the officers have detained them.").  The *Patterson* Court noted that reasonable suspicion must be based on the acts of the individual. *Id.* at 372.  That is what happened here.  Officer Street personally observed Defendant engage in suspicious behavior. *Patterson* does not apply here.

Ultimately, Defendant does not discredit in any meaningful way the testimony of Officer Street.  Officer Street testified to observing Defendant discard a firearm.  That fact plus the

anonymous tip serve to give rise to reasonable suspicion allowing for Officer Street to briefly detain Defendant. Accordingly, the Court **OVERRULES** Defendant's objections and **ADOPTS** the Magistrate Judge's findings.

## II. Defendant's brief detainment did not exceed the scope of the *Terry* stop

In addition to determining whether reasonable suspicion existed, the Court must analyze the circumstances surrounding Defendant's brief detention. *See United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (analyzing "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances"). The Report concluded that Defendant's brief detention did not exceed the scope of a *Terry* stop. (ECF No. 30 at PageID 52.) Defendant does not appear to challenge the Report's findings as to this issue. In the absence of an objection, this Court **ADOPTS** the Magistrate Judge's findings. *See Thomas v. Arn*, 474 U.S. 140, 150–51 (1985).

**B. Defendant's alleged unlawful seizure did not taint the discovery of the firearm.**

As an alternate ground for denying Defendant's Motion, the Magistrate Judge's Report assumed *arguendo* that Defendant was unlawfully detained. Even so, that unlawful detention did not taint the discovery of the firearm. (ECF No. 30 at PageID 54.)

Defendant's objection on this point is not a paragon of clarity. Defendant seems to take issue with the proposition that, because Officer Street did not find the firearm on Defendant, the legality of the underlying seizure does not matter. (ECF No. 37 at PageID 134–35.) Defendant, though, fails to grapple with both the law and facts undergirding the Report's finding.

As noted above, the Fourth Amendment protects individuals from unreasonable searches and seizures. *See* U.S. Const. amend. IV. Evidence obtained as a result of an unconstitutional

11

search or seizure normally must be excluded. *See United States v. Galaviz*, 645 F.3d 347, 354 (6th Cir. 2011). This general rule, though, contains notable exceptions. *Id.* As the Supreme Court has explained, not all evidence is:

> fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Hudson v. Michigan*, 547 U.S. 586, 592 (2006) (quoting *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963)) (internal quotations removed). Assuming *arguendo* that Defendant was unlawfully detained, the Court must determine if that unlawful detention tainted the discovery of the firearm. It did not.

Again, Defendant relies on the case of *United States v. Patterson* to support his argument. (ECF No. 37 at PageID 135.) In *Patterson*, officers discovered the firearm on the defendant's person as part of an **<u>unlawful</u>** *Terry* stop. *See Patterson*, 340 F.3d at 370. Meaning, there was a direct **<u>causal</u>** connection between the unlawful detention and the discovery of the firearm. *See id.* at 370–71. In this case, Officer Street discovered the firearm not on Defendant's person but in the area where Defendant purportedly left it. The absence of this direct link between the detention and discovery of the firearm renders *Patterson* inapposite.

The key fact that ultimately undercuts Defendant's argument is that Officer Street did not discover the firearm on Defendant's person. Rather, Officer Street found the firearm behind the semi-trailer. (ECF No. 30 at PageID 52.) In truth, the Court cannot discern how Defendant's alleged unlawful detention factors into the discovery of the firearm. Put differently, Defendant's seizure could not have occurred at all and that would not change the result here. Regardless of whether Officer Street detained Defendant, nothing prevented Officer Street from walking behind

the semi-trailer and discovering the gun.  Further, Defendant's unlawful seizure in no way assisted Officer Street in locating the gun for he relied on his prior observation to discern its location.  (*Id.*)  Therefore, the Court agrees with the Report and **ADOPTS** its findings.  Accordingly, Defendant's objections are **OVERRULED**.

## Conclusion

For the reasons set forth above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation in its entirety and **OVERRULES** Defendant's objections.  Therefore, Defendant's Motion to Suppress, (ECF No. 23), is hereby **DENIED**.  Further, Defendant's request for a hearing on this matter pursuant to *United States v. Moore*, 936 F.3d 287 (6th Cir. 1991), is also **DENIED**.  (ECF No. 37 at PageID 135.) An additional hearing on this matter is not warranted.

**IT IS SO ORDERED** this 7th day of April, 2021.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE